IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-00275-WYD - MEH

UNITED STATES OF AMERICA,
                    Plaintiff,

v.

CHARLES E. CARLSON, individually, and in
   his official capacity as General Partner
   of Front Range Royalties, Limited, and as
   real party in interest for Frontenac Mining Limited,

FRONT RANGE ROYALTIES, LIMITED, a Colorado
   Limited Partnership, and

FRONTENAC MINING LIMITED, a Colorado
   Limited Partnership,

                    Defendants.

---

**CONSENT DECREE**

---

## TABLE OF CONTENTS

I.      BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.      STATEMENT OF PURPOSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VI.     CONFESSION AND SATISFACTION OF JUDGMENT . . . . . . . . . . . . . . . . . . . . . 6

VII.    FAILURE TO COMPLY WITH CONSENT DECREE . . . . . . . . . . . . . . . . . . . . . . . 11

VIII.   COVENANT NOT TO SUE BY PLAINTIFF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

IX.     RESERVATION OF RIGHTS BY UNITED STATES . . . . . . . . . . . . . . . . . . . . . . . . 13

X.      COVENANT NOT TO SUE BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . 14

XI.     EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . 16

XII.    ACCESS AND ENVIRONMENT COVENANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

XIII.   RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XIV.    CERTIFICATIONS BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . 20

XV.     DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

XVI.    NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XVII.   RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XVIII.  INTEGRATION AND APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

XIX.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . 26

XX.     SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XXI.    TERMINATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

XXII.   FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# I. <u>BACKGROUND</u>

A.      On February 16, 2006, the United States of America ("United States"), on behalf

of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a

complaint in this matter pursuant to Section 107 of the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, 42 U.S.C. § 9607, as amended ("CERCLA"), seeking

reimbursement of response costs incurred or to be incurred for response actions taken or to be

taken at or in connection with the release or threatened release of hazardous substances at

Operable Unit 4 ("OU 4") of the Clear Creek Superfund Site in Gilpin County, Colorado ("the

Site").

B.      The Defendants, Charles E. Carlson, Front Range Royalties, Limited, and

Frontenac Mining Limited, ("Settling Defendants") do not admit any liability to Plaintiff arising

out of the transactions or occurrences alleged in the United States' February 16, 2006 complaint.

C.      The United States has reviewed the Financial Information submitted by Settling

Defendants, identified in Appendix A hereto, to determine whether Settling Defendants are

financially able to pay response costs incurred and to be incurred by the United States at the Site.

Based upon this Financial Information, the United States has determined that Settling Defendants

are unable to pay response costs incurred and to be incurred by the United States except as

otherwise specified in Section VI, of this Consent Decree.

D.      The United States and Settling Defendants agree, and this Court by entering this

Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith,

that settlement of this matter will avoid prolonged and complicated litigation between the Parties,

and that this Consent Decree is fair, reasonable, and in the public interest.

**THEREFORE**, with the consent of the Parties to this Decree, it is **ORDERED**, **ADJUDGED**, and **DECREED**:

## II.  JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has personal jurisdiction over Settling Defendants.  Settling Defendants consent to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III.  PARTIES BOUND

2.      This Consent Decree is binding upon the United States and upon Settling Defendants and their respective heirs, successors, or assigns.  Any change in ownership, or partnership or corporate legal status, or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of any Settling Defendant under this Consent Decree.

## IV.  DEFINITIONS

3.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a.  "**CERCLA**" shall mean the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601 - 9675.

b. "**Consent Decree**" shall mean this Consent Decree and all appendices attached hereto.  In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

c. "**Day**" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

d. "**DOJ**" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

e. "**EPA**" shall mean the United States Environmental Protection Agency, its employes, and any successor departments, agencies or instrumentalities of the United States.

f. "**EPA Hazardous Substance Superfund**" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

g. "**Fair Market Value**" shall, except in the event of a foreclosure, transfer by deed or other assignment in lieu of foreclosure, mean the price at which the Property would change hands between a willing buyer and a willing seller under actual market conditions, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts.  In the event of a transfer by foreclosure, "Fair Market Value" shall mean the amount obtained at the foreclosure sale.  In the event of a transfer by a deed or other assignment in lieu of foreclosure, "Fair Market Value" shall mean the current value of the Property as appraised by Gilpin County for purposes of assessing local real estate taxes.

h.  "**Financial Information**" shall mean those financial documents identified in Appendix A.

i.  "**Interest**" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a).  The applicable rate of interest shall be the rate in effect at the time the interest accrues.  The rate of interest is subject to change on October 1 of each year.  Except as provided for in this Consent Decree, no other interest shall accrue on the judgment confessed by Settling Defendants under Paragraph 5 of this Consent Decree.

j.  "**Net Sales Proceeds**" shall mean the total value of all consideration received by Settling Defendants for each Transfer (or if the consideration cannot be determined, the Fair Market Value of the Property) less: (i) the balance of Settling Defendants' mortgage on the Property; (ii) closing costs limited to those reasonably incurred and actually paid by Settling Defendants associated with the Transfer of the Property; (iii) federal and state taxes owed on the proceeds; and (iv.) lawful prior encumbrances.  Settling Defendants shall provide EPA with documentation sufficient to show the total value of all consideration received by Settling Defendants for each Transfer (or if the consideration cannot be determined, the Fair Market Value of the Property) at the time of each Transfer, the amount of the proceeds of the Transfer, and the amounts corresponding to items (i.) through (iii.), above.  This documentation shall include, but not be limited to, the report of an appraisal paid for by Settling Defendants, performed by an appraiser satisfactory to the United States, upon appraisal assumptions satisfactory to the United

4

States.  The documentation shall also include, either as part of the report or separately, (v.) a tax statement showing the assessed valuation of the Property for each of the three years immediately preceding the Transfer, and (vi.) a schedule showing all outstanding indebtedness on the Property. Any amounts owed by Settling Defendants under the JWW Realty Deed of Trust dated May 24, 2002 shall not reduce, be deducted from, or otherwise be reflected in Settling Defendants' calculation of  "Net Sale Proceeds" under this Consent Decree.

k.   "**Paragraph**" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

l.   "**Parties**" shall mean the United States, and the Settling Defendants.

m.   "**Plaintiff**" shall mean the United States.

n.   "**Property**" shall mean the real property identified in Appendix B.

o.  "**RCRA**" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 - 6992k (also known as the Resource Conservation and Recovery Act).

p.   "**Section**" shall mean a portion of this Consent Decree identified by a Roman numeral.

q.   "**Settling Defendants**" shall mean Charles E. Carlson, Front Range Royalties, Limited, and Frontenac Mining Limited and their respective heirs, successors, or assigns.

r.   "**Site**" shall mean operable unit four or "OU 4" of the Clear Creek Superfund Site encompassing the Druid Mine which occupies approximately 125 acres within Section 24, Township 3 South, Range 73 West in Gilpin County, Colorado, situated in South Willis Gulch.

s.   "**State**" shall mean the State of Colorado, including its departments, agencies

5

and instrumentalities, and employees.

t. "**Transfer**" shall mean each sale, assignment, transfer, or exchange by or on behalf of any Settling Defendant (or its successors or heirs) of the Property, or any portion thereof or interest therein, where title to the Property, or any portion thereof or interest therein: (i.) is transferred and Fair Market Value is received in consideration; or (ii.) is transferred involuntarily by operation of law, including foreclosure and its equivalents following default on the indebtedness secured, in whole or in part, by the Property, including, but not limited to, a deed or other assignment in lieu of foreclosure.

u. "**United States**" shall mean the United States of America, including its departments, agencies and instrumentalities.

## V.  STATEMENT OF PURPOSE

4.       By entering into this Consent Decree, the mutual objective of the Parties is to protect human health, public welfare, and the environment and to resolve Plaintiff's claims against the Settling Defendants as provided in this Consent Decree.

## VI.  CONFESSION AND SATISFACTION OF JUDGMENT

5.       Settling Defendants hereby agree and confess to entry of a a judgment against the Settling Defendants and in favor of the United States for the benefit of EPA in the amount of two hundred thousand dollars ($200,000.00).  The United States shall file this judgment as and where necessary to preserve secured creditor status in favor of EPA.  This judgment shall remain in effect until Settling Defendants have complied with all requirements in this Consent Decree.  Any payments made by Settling Defendants pursuant to this Consent Decree shall, in the aggregate,

6

not exceed the judgment amount.   For so long as Settling Defendants comply with the

requirements of Paragraphs 6 - 12 and 26 of this Consent Decree, the United States will forebear

from seeking to satisfy the judgment created by this Paragraph from the personal assets of

Defendant Charles E. Carlson.

6.   To satisfy the judgment, Settling Defendants shall upon the date of entry of this

Consent Decree begin using their best efforts ("Best Efforts") to sell the Property identified in

Appendix B.  Upon the Transfer of any portion of the Property, Settling Defendants shall pay to

the EPA, fifty percent (50%) of the Net Sales Proceeds of any Transfer until EPA has received a

total of one hundred thousand dollars ($100,000.00).  For all Transfers of Property thereafter,

Settling Defendants shall pay to the EPA, twenty-five percent (25%) of the Net Sales Proceeds of

any such Transfer until EPA has received the full judgment amount, $200,000.  The judgment

shall be deemed satisfied upon either: (i.) EPA's receipt of the full judgment amount ($200,000);

or (ii.) Five (5) years from the date of entry of this Consent Decree, irrespective of the Transfer

proceeds paid by Settling Defendants to EPA, but contingent upon Settling Defendants'

demonstration that it continually used Best Efforts to sell the Property during the preceding five

year period.

7.   Settling Defendants shall make all necessary arrangements with the title company

or other entity conducting the closing on any Transfer to pay to EPA the amounts specified in

Paragraph 6 within thirty (30) days after any closing.  Until the transfer of funds to the Special

Account is completed pursuant to Paragraph 11, all Net Sales Proceeds shall be held in an escrow

account for the benefit of the EPA by the title company or other entity conducting the closing.  In

7

the event there is any dispute with regard to the amounts owed EPA under this Section, the disputed portions of the funds shall be held in escrow for the benefit of the Parties pending resolution of the dispute in accordance with Section XV (Dispute Resolution).

8.      Where any Transfer is for a sum less than the tax assessed value of the Property, Settling Defendants shall provide notice to EPA at least thirty (30) days in advance of said Transfer.  For such Transfers, EPA in its sole discretion, may require Settling Defendants to submit an appraisal of the Property subject to the Transfer that is performed by an independent appraiser, upon generally recognized appraisal assumptions at least thirty (30) days in advance of said Transfer.  EPA may object to the Transfer based on the proposed sale price.  Any such dispute shall be resolved in accordance with Section XV (Dispute Resolution).

9.      For the purposes of Paragraph 6, Best Efforts to sell the Property shall include, but not be limited to:

   a.      Ensuring that the Property is sold for the highest price;

   b.      Employing a real estate agent or broker who is licensed in the State of Colorado and who shall follow the usual and normal practices for selling real estate, including, for example, listing the Property in one or more real estate listing services regularly used by real estate agents, brokers, and others and using other reasonable means to ensure that the availability for sale is known to potential buyers;

   c.      Responding to the reasonable inquiries of prospective buyers;

   d.      Maintaining the Property in a condition suitable for exhibition to

8

prospective buyers;

e.      Allowing the Property to be shown at all reasonable times; and

f.      Assisting the broker, dealer or agent in any other reasonable way requested in an effort to sell the Property.

Settling Defendants shall report to EPA on or before  December 31 of each year until the judgment is satisfied or until five years has lapsed and identifying the real estate agent or broker employed to sell the Property, and describing any and all offers to purchase the Property, and such actions taken by Settling Defendants in the preceding year to satisfy the Best Efforts requirement of Paragraph 6, <u>supra</u>.

10.     At least thirty (30) days prior to any Transfer of the Property by Settling Defendants, Settling Defendant shall notify EPA of the proposed Transfer, which notice shall include: (i.) a description of the real estate to be sold; (ii.) the identity of the successor-in-interest; (iii.) the terms of the Transfer, including the estimated closing costs, the consideration to be paid and a copy of the Transfer agreement; (iv.) the name and address of the title company or other entity conducting the closing; and (v.) the date on which the successor-in-interest was given notice of the requirements of this Consent Decree.  Settling Defendants shall notify EPA of the completion of the Transfer within ten (10) days after the date of closing and shall include with such notification a copy of the closing binder, including final executed documentation for the conveyance and a work sheet setting forth the Net Sales Proceeds and the amount payable to EPA.

11.     <u>Payment of Proceeds From The Transfer of Property</u>.

9

Payments shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund" or by wire transfer.  The check, or a letter accompanying each check, shall identify the name and address of the party making payment, the Site name, the EPA Region and Site/Spill ID # 0813, and DOJ Case Number 90-11-3-08439, and shall be sent to:

<u>Regular mail</u>:      Mellon Bank
                      Attn: Superfund Accounting
                      Lockbox 360859
                      Pittsburgh, PA 15251-6859

<u>Overnight Mail</u>:     U.S. EPA 360859
                      Mellon Client Service Center Room 670
                      500 Ross Street
                      Pittsburgh, PA 15262-0001

<u>Wire Transfers</u> should be sent directly to the Federal Reserve Bank in New York City with the following information:

                      ABA=021030004
                      TREAS NYC/CTR
                      BNF=/AC-68011008

Settling Defendants shall send notice that payment has been made in accordance with Paragraph 38.  Any amounts paid pursuant to Paragraph 6 of this Consent Decree by the Settling Defendants shall be deposited into the Clear Creek Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions  at or in connection with the Site.  Any balance remaining in the Clear Creek Special Account at the completion of response actions at the Site shall be transferred by EPA to the EPA Hazardous

10

Substance Superfund.

## VII. <u>**FAILURE TO COMPLY WITH CONSENT DECREE**</u>

12.      <u>Interest on Late Payments and Stipulated Penalty</u>.

a.      If any amounts due under Paragraph 6 are not paid by the required due date, Interest shall accrue on the unpaid balance through the date of payment.

b.      If any amounts due under Paragraph 6 are not paid by the required date, Settling Defendants shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, $100 per violation per day that such payment is late.  If Settling Defendants do not comply with the non-payment obligations set forth in the Consent Decree, including obligations relating to access and institutional controls, Settling Defendants shall be in violation of this Consent Decree and shall pay to EPA, as a stipulated penalty, $1000 per violation per day of such noncompliance.

c.      Stipulated penalties are due and payable within 30 days of the date of the demand for payment of the penalties by EPA.  All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund" or by wire transfer in accordance with the provisions set forth in Paragraph 11 above.

d.      Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Settling Defendants of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment or performance is due or the day a violation occurs, and shall continue to accrue through the date of

11

payment or the final day of correction of the noncompliance or completion of the activity. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

13.     If the United States brings an action to enforce this Consent Decree, Settling Defendants shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

14.     Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Settling Defendants' failure to comply with the requirements of this Consent Decree.

15.     Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse Settling Defendants from payment as required by Section VI or from performance of any other requirements of this Consent Decree.

## VIII.  COVENANT NOT TO SUE BY PLAINTIFF

16.     Except as specifically provided in Section IX (Reservation of Rights by United States), the United States covenants not to sue or to take administrative action against Settling Defendants pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), with regard to the Site. This covenant not to sue is conditioned upon the satisfactory performance by Settling Defendants of all of their obligations under this Consent Decree.  This covenant not to sue is also conditioned upon the veracity and completeness of the Financial Information provided to EPA by Settling

Defendants.  If the Financial Information is subsequently determined by EPA to be false or, in any material respect, inaccurate or incomplete, Settling Defendants shall forfeit all payments made pursuant to this Consent Decree and this covenant not to sue and the contribution protection in this Paragraph shall be null and void.  Such forfeiture shall not constitute liquidated damages and shall not in any way foreclose the United States' right to pursue any other causes of action arising from Settling Defendants' false or materially inaccurate information.  This covenant not to sue becomes effective upon entry of the Consent Decree and extends only to Settling Defendants and does not extend to any other person.

## IX.   RESERVATION OF RIGHTS BY UNITED STATES

17.   The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendants with respect to all matters not expressly included within the Covenant Not to Sue by United States in Paragraph 16.  Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against each Settling Defendant with respect to:

a.   liability for failure of each Settling Defendant to meet a requirement of this Consent Decree;

b.   criminal liability;

c.   liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

d.   liability, based upon Settling Defendants' ownership or operation of the Site, or upon Settling Defendants' transportation, treatment, storage, or disposal, or the

13

arrangement for the transportation, treatment, storage, or disposal, of a hazardous substance or a solid waste at or in connection with the Site, after signature of this Consent Decree by Settling Defendants; and

   e.  liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance or pollutant or contaminant outside of the Site.

  18.  Notwithstanding any other provision of this Consent Decree, the United States reserves, and this Consent Decree is without prejudice to, the right to re-institute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if the Financial Information provided by Settling Defendants, or the financial certification made by Settling Defendants in Paragraph 30, is false or, in an material respect, inaccurate or incomplete.

## X.  COVENANT NOT TO SUE BY SETTLING DEFENDANTS

  19.  Settling Defendants covenant not to sue and agree not to assert any judicial or administrative claims or causes of action against the United States, the State, or their contractors, or employees, with respect to the Site or this Consent Decree, including but not limited to:

   a.  any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

   b.  any claim arising out of response actions taken by the United States or the State at or in connection with the Site, including any claim under the United States Constitution, the State Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law;

14

c.       any claim pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§

9607 and 9613, relating to the Site; or

d.       Any claim in law or equity related to or arising from the Site.

Except as provided in Paragraph 21 (Waiver of Claims) and Paragraph 25 (Waiver of Claim-

Splitting Defenses), these covenants not to sue shall not apply in the event the United States or

the State brings a cause of action or issues an order pursuant to the reservations set forth in

Paragraph 17 (c) - (e), but only to the extent that Settling Defendants' claims arise from the same

response action or response costs that the United States or the State is seeking pursuant to the

applicable reservation.

20.      Nothing in this Consent Decree shall be deemed to constitute approval or

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or

40 C.F.R. 300.700(d).

21.      Settling Defendants agree not to assert any CERCLA claims or causes of action

that they may have for all matters relating to the Site, including for contribution, against any other

person.  This waiver shall not apply with respect to any defense, claim, or cause of action that

Settling Defendants may have against any person if such person asserts a claim or cause of action

relating to the Site against Settling Defendants.

## XI.  **EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION**

22.      Nothing in this Consent Decree shall be construed to create any rights in, or grant

15

any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law.  Except as provided herein, the Parties expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

23.     The Parties agree, and by entering this Consent Decree this Court finds, that Settling Defendants are entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree.  The "matters addressed" in this Consent Decree are all response actions taken or to be taken and all response costs incurred or to be incurred, at or in connection with the Site, by the United States or the State.  The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Consent Decree), in the event that the United States asserts rights against Settling Defendants coming within the scope of such reservations.

24.     Settling Defendants agree that with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify EPA and DOJ in writing within ten (10) days of service of the complaint or claim upon it.  In addition, Settling Defendants shall notify EPA and DOJ within ten (10) days of service or receipt of any Motion for Summary Judgment, and within ten (10) days of receipt of any order from a court setting a case

16

for trial, for matters related to this Consent Decree.

25.     In any subsequent administrative or judicial proceeding initiated by the United

States for injunctive relief, recovery of response costs, or other relief relating to the Site, Settling

Defendants shall not assert, and may not maintain, any defense or claim based upon the principles

of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses

based upon any contention that the claims raised by the United States in the subsequent

proceeding were or should have been brought in the instant case; provided, however, that nothing

in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in

Section VIII.

## XII.  <u>ACCESS AND ENVIRONMENT COVENANTS</u>

26.     For those portions of the Site and the Property that are owned or controlled by

Settling Defendants for which access and/or land/water use restrictions are needed to implement

response activities at the Site, Settling Defendants shall:

a.      commencing on the date of lodging of this Consent Decree, provide the

United States, the State, and their representatives, including EPA and its contractors, with access

at all reasonable times to the Site, or such other Property, for the purpose of conducting or

implementing any response activity related to the Site, including, but not limited to, the following

activities:

1. Monitoring, investigating, implementing removal and/or remedial

actions, or any other activity necessary to implement the remedies selected

by EPA or the State for the Site;

17

2.   Verifying any data or information submitted to the United States or the

State;

3.  EPA or State conduct of investigations relating to contamination at or

near the Site;

4.  Obtaining samples;

5.  Assessing the need for, planning, or implementing additional response

actions at or near the Site;

6.  Assessing Settling Defendants' compliance with this Consent Decree;

and

7.  Determining whether the Site or other Property is being used in a

manner that is prohibited or restricted, or that may need to be prohibited or

restricted, by or pursuant to this Consent Decree;

b.        Commencing on the date of lodging of this Consent Decree, refrain from

using the Site, or such other Property, in any manner that would interfere with or adversely affect

the implementation, integrity or protectiveness of the remedial measures to be performed at the

Site;

c.        Within thirty (30) days of entry of this Consent Decree, execute and record

in the appropriate land records office of Gilpin County, State of Colorado, an environmental

covenant in the form attached hereto as Appendix C on the Property identified in Appendix D,

which runs with the land, that (i.) grants a right of access for the purposes specified in Paragraph

26a; (ii.) grants a right of access for the purpose of conducting response activities at the Site; and

18

(iii.) grants the right to enforce the land/water use restrictions set forth therein, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed at the Site; and

d.      Within sixty (60) days of entry of this Consent Decree, provide EPA with a copy of the fully executed easement and environmental covenant that has been recorded in the appropriate land records office of Gilpin County, State of Colorado, in accordance with the preceding Paragraph.

27.      Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

### XIII.  RETENTION OF RECORDS

28.      Until three (3) years after the entry of this Consent Decree, Settling Defendants shall preserve and retain all records now in their possession or control, or which come into their possession or control, that relate in any manner to response actions taken at the Site or the liability of any person under CERCLA with respect to the Site, regardless of any corporate retention policy to the contrary.

29.      After the conclusion of the document retention period in the preceding paragraph, Settling Defendants shall notify EPA and DOJ at least ninety (90) days prior to the destruction of any such records, and, upon request by EPA or DOJ, Settling Defendants shall deliver any such records to EPA.  Settling Defendants may assert that certain records are privileged under the

attorney-client privilege or any other privilege recognized by federal law.  If any Settling

Defendant asserts such a privilege, it shall provide Plaintiff with the following: (a.) the title of the

record; (b.) the date of the record; (c.) the name and title of the author of the record; (d.) the

name and title of each addressee and recipient; (e.) a description of the subject of the record; and

(f.) the privilege asserted.  However, no records created or generated pursuant to the

requirements of this or any other settlement with the United States shall be withheld on the

grounds that they are privileged.

## XIV.  CERTIFICATIONS BY SETTLING DEFENDANTS

30.     Settling Defendants each hereby certify that, to the best of their knowledge and

belief, after thorough inquiry, they have:

a.      not altered, mutilated, discarded, destroyed or otherwise disposed of any

records, reports, or other information relating to their potential liability regarding the Site since

notification of potential liability by the United States or the State or the filing of suit against them

regarding the Site, and that they have fully complied with any and all EPA requests for

information regarding the Site and Settling Defendants' financial circumstances pursuant to

Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and 9622(e), and Section 3007 of

RCRA, 42 U.S.C. § 6927;

b.      not become aware of any insurance policies for general liability or property

damage issued for the benefit of Settling Defendants, or any predecessor in interest or affiliate;

and

c.      submitted to EPA Financial Information that fairly, accurately, completely,

and materially sets forth their financial circumstances, and that those circumstances have not

materially changed between the time the Financial Information was submitted to EPA and the time

Settling Defendants execute this Consent Decree.

31.     In the event that evidence of any insurance policies for environmental impairment,

general liability, comprehensive liability, primary, umbrella, excess, casualty, or property damage

issued for the benefit of Settling Defendants, or any predecessor in interest or affiliate is

discovered, Settling Defendants shall, at the request of the United States, irrevocably assign to the

United States all rights to insurance claims proceeds with respect to any and all environmental

claims made by the United States against Settling Defendants and Settling Defendants shall

execute all necessary documents to effectuate such assignment.

## XV.  DISPUTE RESOLUTION

32.     Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

under or with respect to this Consent Decree.  However, the procedures set forth in this Section

shall not apply to actions by the United States to enforce obligations of the Settling Defendants

that have not been disputed in accordance with this Section.

33.     Informal Dispute Resolution.  Any dispute which arises under or with respect to

this Consent Decree shall in the first instance be the subject of informal negotiations between the

Parties.  The period for informal negotiations shall not exceed twenty (20) days from the time the

dispute arises, unless the period of time is modified by written agreement of the Parties.  The

dispute shall be considered to have arisen when one Party sends the other Party a written Notice

of Dispute.

34.     Formal Dispute Resolution.  In the event that the Parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within seven (7) days after the conclusion of the informal negotiation period, Settling Defendants invoke the formal dispute resolution procedures of this Section by serving by first class, return receipt mail on the Assistant Regional Administrator of the Office of Enforcement, Compliance and Environmental Justice, EPA Region 8 ("Assistant Regional Administrator"), a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendants.

35.     Within fifteen (15) days after receipt of Settling Defendants' Statement of Position, EPA will serve by first class, return receipt mail on Settling Defendants its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA.  Within fifteen (15) days after receipt of EPA's Statement of Position, Settling Defendants may serve by first class, return receipt mail on the Assistant Regional Administrator, a written Reply.

36.     Formal dispute resolution shall be governed by this Paragraph.  Following receipt of Settling Defendants' written Reply submitted pursuant to Paragraph 35, the Assistant Regional Administrator will issue a final decision resolving the dispute.  The Assistant Regional Administrator's decision shall be binding on the Settling Defendants unless, within ten (10) days of receipt of the decision, the Settling Defendants file with the Court and serve on the United

States pursuant to Rule 4, Federal Rules of Civil Procedure, a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the Parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree.  The United States may file a response to Settling Defendants' motion.  Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

37.    The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendants under this Consent Decree, not directly in dispute, unless EPA agrees or the Court directs otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute.  Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree.  In the event that the Settling Defendants do not prevail on the disputed issue, stipulated penalties may be assessed and paid as provided in Section VII (Failure To Comply With Consent Decree) of this Consent Decree.

## XVI.  NOTICES AND SUBMISSIONS

38.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United

States, EPA, DOJ, and Settling Defendants, respectively.

<u>As to the United States</u>:

<u>As to DOJ</u>:
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-08439)
P.O. Box 7611
Washington, D.C.  20044-7611

As to EPA:
Andrea Madigan
Enforcement Attorney
U.S. Environmental Protection Agency
1595 Wynkoop Street
Denver, Colorado 80202

<u>As to the EPA Regional</u>
<u>Financial Mgmt Officer</u>:
Martha Walker
EPA Financial Mgmt Officer
U. S. EPA Region 8
Mail Code 8TMS-F
1595 Wynkoop Street
Denver, CO 80202

<u>As to Settling Defendants</u>:
Mr. Charles E. Carlson
12836 North 60th Street
Scottsdale, Arizona  85254
(602) 741-4650

## XVII.  <u>RETENTION OF JURISDICTION</u>

39.   This Court shall retain jurisdiction over this matter for the purpose of interpreting

and enforcing the terms of this Consent Decree.

## XVIII.  INTEGRATION AND APPENDICES

40.     This Consent Decree and its appendices constitute the final, complete and exclusive Consent Decree and understanding between the Parties with respect to the settlement embodied in this Consent Decree.  The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.  The following appendices are attached to and incorporated into this Consent Decree:

"**Appendix A**" is the list of financial documents submitted by Settling Defendants to EPA to enable EPA to perform an ability to pay analysis on each Defendant;

"**Appendix B**" is a list of real property currently owned by the Settling Defendants subject to the transfer provisions of Section VI of this Consent Decree;

"**Appendix C**" is a form of  environmental covenant; and

"**Appendix D**" is a list of Property in whose chain of title the Defendants will record the environmental covenant set forth in Attachment C.

## XIX.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

41.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.

Settling Defendants consent to the entry of this Consent Decree without further notice.

42.     If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XX.  SIGNATORIES/SERVICE

43.     The undersigned representative of the Environmental Enforcement Section for the Environment and Natural Resources Division of the United States Department of Justice certifies that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.  The undersigned representative of Settling Defendants to this Consent Decree, Charles E. Carlson, certifies that he is the sole general partner of the Settling Defendants and is entering this Consent Decree on behalf of Settling Defendants with all legal authority vested in general partners by and under Colorado law.

44.     Settling Defendants hereby agree not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Settling Defendants in writing that it no longer supports entry of the Consent Decree.

45.     Settling Defendants shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on their behalf with respect to all matters arising under or relating to this Consent Decree.  Settling Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

26

## XXI.  <u>TERMINATION</u>

46.     Except as to the Covenants and Reservations set forth in Sections VIII - X, this

Consent Decree shall terminate eight (8) years after the date it is entered by the Court.

## XXII.  <u>FINAL JUDGMENT</u>

47.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute the final judgment between the United States and Settling Defendants.

The Court finds that there is no just reason for delay and therefore enters this judgment as a final

judgment under Fed. R. Civ. P. 54 and 58.

Dated:  May 21, 2007

BY THE COURT:


<u>s/ Wiley Y. Daniel          </u>
Wiley Y. Daniel
U. S. District Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States v. Charles E. Carlson*, Civ. No. 06-cv-000275-WYD-MEH (D. Colo.), relating to the Clear Creek Superfund Site.

**FOR DEFENDANT CHARLES E. CARLSON**

Date:  February 20, 2007        *s/ Charles E. Carlson*
                                CHARLES E. CARLSON

**FOR DEFENDANT FRONT RANGE ROYALTIES, LIMITED**

Date:  February 20, 2007        *s/ Charles E. Carlson*

                                CHARLES E. CARLSON
                                General Partner
                                Front Range Royalties, Limited, a Colorado Limited Partnership

**FOR DEFENDANT  FRONTENAC MINING, LIMITED**

Date:  February 20, 2007        *s/ Charles E. Carlson*
                                CHARLES E. CARLSON
                                General Partner
                                Frontenac Mining Limited, a Colorado Limited Partnership

Agent Authorized to Accept Service on Behalf of Above-signed Parties:

Name:         Coleman R. Robinson

Title:        Agent For Process of Service

Address:      411 Melba Road
              Sterling, Colorado, 80751

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Charles E. Carlson*, Civ. No. 06-cv-000275-WYD-MEH (D. Colo.), relating to the Clear Creek Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

Date: March 8, 2007          *s/ W. Benjamin Fisherow*
                                            W. Benjamin Fisherow
                                            Deputy Chief, Environmental Enforcement Section
                                            Environment and Natural Resources Division
                                            U.S. Department of Justice
                                            P.O. Box 7611
                                            Washington, D.C.  20044-7611

Date: March 12, 2007        *s/ John N. Moscato*
                                            JOHN N. MOSCATO
                                            Senior Counsel
                                            Environmental Enforcement Section
                                            Environment and Natural Resources Division
                                            U.S. Department of Justice
                                            1961 Stout Street, 8th Floor
                                            Denver, CO 80294
                                            john.moscato@usdoj.gov
                                            (303) 844-1380

29

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States v. Charles E. Carlson*, Civ. No. 06-cv-000275-WYD-MEH (D. Colo.), relating to the Clear Creek Superfund Site.

**FOR THE U.S. EPA**

Date: March 13, 2007         *s/Eddie Sierra*
                            EDDIE SIERRA
                            Acting Assistant Regional Administrator, Region 8
                            Office of Enforcement, Compliance
                            and Environmental Justice
                            U.S. Environmental Protection Agency
                            1595 Wynkoop Street
                            Denver, Colorado 80202

Date: March 2, 2007         *s/ Andrea Madigan*
                            ANDREA MADIGAN
                            Enforcement Attorney
                            U.S. Environmental Protection Agency
                            1595 Wynkoop Street
                            Denver, Colorado 80202

# APPENDIX A

**DOCUMENTS REVIEWED FOR EPA'S ABILITY-TO-PAY DETERMINATION**

1.   Response Letter from Charles Carlson, dated October 31, 2006, in response to Stipulation on Resolution of Certain Issues

2.   Financial Data Request Form, signed by Mr. Carlson dated October 31, 2006

3.   Financial Statement of Business for Frontenac Mining

4.   Financial Statement of Business for Captain Jack Mining

5.   Financial Statement of Business for We Hold These Truths

6.   U.S. Individual Income Tax Return for Charles and Oneeda Carlson, Form 1040, 2003 through 2005 (unsigned)

7.   U.S. Return of Partnership Income for We Hold These Truths, Ltd., Form 1065, 2001 through 2005 (2001signed, 2002-2005 unsigned)

8.   Notarized Certificates signed by Charles Carlson for Captain Jack Mining, We Hold These Truths, and Frontenac Mining/Front Range, dated November 11, 2006

9.   Response letter to Second Information Request, datestamped November 14, 2006

10.  Response letter to Financial Information from Corporations, datestamped November 14, 2006

11.  Response letter from Charles Carlson, dated November 20, 2006 to DOJ November 16, 2006 Information Request

12.  Response letter from Charles Carlson, dated November 22, 2006 to DOJ November 21, 2006 Information Request

13.  U.S. Return of Partnership Income for We Hold These Truths, Ltd., Form 1065, Schedule K-1s, 2001 through 2003

14.  U.S. Return of Partnership Income for Oneeda, Ltd., Form 1065, 2001 and 2002

15.  Attorney-Client Fee Contract dated June 22 1993 between Conrad Gardner and Charles Carlson

16.  Attorney-Client Fee Contract dated November 7 1997 between Conrad Gardner and Charles Carlson

17.    Samples of filings from 4 or 5 cases where Gardner represented Carlson

18.    U.S. Return of Partnership Income for Front Range Royalties, Ltd., Form 1065, 1999

19.    U.S. Return of Partnership Income for Frontenac Mining, Ltd., Form 1065, 1999

20.    U.S. Return of Partnership Income for Rocky Mountain Mining, Ltd., Form 1065, 1999

21.    Conference call between Charles Carlson, IEc, EPA, and DOJ on December 12, 2006

22.    Response Letter from Charles Carlson, dated December 28, 2006, in response to documents and questions requested following conference call on December 12, 2006

23.    1993 Amendment to Certificate of Limited Partnership of Captain Jack Limited signed by Charles Carlson dated November 17, 1994

24.    Treasurer's Deeds on Frontenac Gilpin County properties

25.    Deed of Trust between Frontenac and JWW Realty dated May 24, 2002

26.    Transcript of Judgment between Solution Gold and Front Range Royalties dated January 14, 1999

27.    Transcript of Judgment between Solution Gold and Front Range Royalties dated February 3, 1999

28.    Notice of Corrected Federal Lien dated March 16, 2005

29.    Deed of Trust between Front Range Royalties and Conrad Gardner dated December 14, 1998 (1)

30.    Deed of Trust between Front Range Royalties and Conrad Gardner dated December 14, 1998 (2)

31.    IRS Tax Transcripts for Charles and Oneeda Carlson for tax years 2001 through 2005

32.    IRS Tax Transcript for Oneeda Limited for tax tear 2003

# APPENDIX B

**PROPERTY SUBJECT TO TRANSFER PROVISIONS SET FORTH IN SECTION VI OF CONSENT DECREE**

| Name | US Number | Ownership Percentage | Acres Total (estimated) | County |
|---|---|---|---|---|
| Addudell | # 302 | 100 | 2.29 | Gilpin |
| Autocrat | # 800 | 100 | 2.88 | Gilpin |
| Baltimore | #7391 | 100 | 3.82 | Gilpin |
| Big Wampum | # 882 | 100 | 2.59 | Gilpin |
| Col Fry | # 362 | 100 | 5.16 | Gilpin |
| East Hazeltine | # 948 | 100 | 4.57 | Gilpin |
| East Centennial | # 6898 | 100 | 4.76 | Gilpin |
| Eleventh Hour | # 6898 | 100 | 4.76 | Gilpin |
| Francis | # 20064 | 100 | 1 | Gilpin |
| Frontenac Lode and Millsite Acres | #461 (A and B) | 100 | 9.75 | Gilpin |
| Gaston | # 369 | 100 | 0.69 | Gilpin |
| Good Luck | # 994 | 85 | 1.7 | Gilpin |
| Hazeltine | # 332 | 100 | 5.16 | Gilpin |
| Herschel | # 585 | 100 | 5.16 | Gilpin |
| Howard Recompenses | # 744 | 100 | 1.34 | Gilpin |
| K of P | # 14911 | 100 | 2.59 | Gilpin |
| Kokamo (Kokomo in county records) | # 149 | 100 | 3.44 | Gilpin |
| Mohongo (Mohogo in county records) | # 360 | 100 | 3.75 | Gilpin |
| Paul | # 416 | 100 | 1.72 | Gilpin |
| Quandry | # 747 | 100 | 4.74 | Gilpin |

| Name | US Number | Ownership Percentage | Acres Total (estimated) | County |
|---|---|---|---|---|
| Sangar (Sanger in county records) | # 6003 | 100 | 2.1 | Gilpin |
| Searle | # 156 | 100 | 2.3 | Gilpin |
| Tiger | # 881 | 100 | 4.14 | Gilpin |
| Timbuktu (Timbuctoo in county records) | # 16800 | 75 | 3.052 | Gilpin |
| West Hazeltine | # 743 | 50 | 4.31 | Gilpin |
| White Rock | # 10955 | 100 | 3.38 | Gilpin |
| Dora | # 264 | 10 | | Clear Creek |
| Good Enough | # 7448 | 10 | | Clear Creek |
| Prince Henry | # 15857 | 10 | | Clear Creek |
| Seaton Acres | # 72 | 10 | | Clear Creek |
| Seaton Disc | # 89 | 10 | | Clear Creek |
| Seaton | # 385 | 10 | | Clear Creek |
| Sunny side | # 2314 | 10 | | Clear Creek |

# APPENDIX C

**This property is subject to an Environmental Covenant held by the Colorado Department of Public Health and Environment pursuant to Section 25-15-321, C.R.S.**

## ENVIRONMENTAL COVENANT

CHARLES E. CARLSON, an individual, FRONT RANGE ROYALTIES, LIMITED, a Colorado Limited Partnership, and FRONTENAC MINING LIMITED, a Colorado Limited Partnership, (hereinafter the "Grantors ") grant an Environmental Covenant ("Covenant") this _____day of February, 2007 to the Hazardous Materials and Waste Management Division of the Colorado Department of Public Health and the Environment ("the Department") pursuant to § 25-15-321 of the Colorado Hazardous Waste Act, § 25-15-101, *et seq.*  The Department's address is 4300 Cherry Creek Drive South, Denver, Colorado 80246-1530.

WHEREAS, Grantors own certain real property described in Attachment A, attached hereto and incorporated herein by reference as though fully set forth (hereinafter referred to as "the Property"); and

WHEREAS, the Property is part of the Central City/Clear Creek Superfund Site ("Site"), which the U.S. Environmental Protection Agency ("EPA"), pursuant to Section 105 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9605, placed on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the <u>Federal Register</u> in 1983; and

WHEREAS, in the Central City/Clear Creek Superfund Site Operable Unit 4 Record of Decision dated September 29, 2004 (the "ROD"), the EPA Region VIII Regional Administrator selected a "remedial action" for the Site, which provides, in part, for the following actions:

   a.   Construction of sediment dams in Russell and Nevada Gulch;
   b.   Excavation, capping or stabilization of certain mine waste piles;
   c.   Maintenance related to all construction components;
   e.   Institutional controls (e.g., an environmental covenant) to limit human exposure to mine wastes and ensure the long-term integrity of the remedial action; and

WHEREAS, pursuant to the ROD, the Property is the subject of remedial action pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq. ("CERCLA"); and

WHEREAS, the purpose of this Covenant is to ensure protection of human health and the environment by ensuring that constructed portions of the remedy remain intact and functioning as designed, and

1

WHEREAS, Grantors desire to subject the Property to certain covenants and restrictions as provided in Article 15 of Title 25, Colorado Revised Statutes, which covenants and restrictions shall burden the Property and bind Grantors and all parties having any right, title or interest in the Property, or any part thereof, their heirs, successors and assigns, and any persons using the land, as described herein, for the benefit of the Department.

NOW, THEREFORE, Grantors hereby grant this Environmental Covenant to the Department, and declares that the Property as described in Attachment A shall hereinafter be bound by, held, sold, and conveyed subject to the following requirements set forth in paragraphs 1 through 10, below, which shall run with the Property in perpetuity and be binding on Grantors and all parties having any right, title or interest in the Property, or any part thereof, their heirs, successors and assigns, and any persons using the land, as described herein.   As used in this Environmental Covenant, the term OWNER means the record owner of the Property and, if any, any other person or entity otherwise legally authorized to make decisions regarding the transfer of the Property or placement of encumbrances on the Property, other than by the exercise of eminent domain.

1) Use restrictions

   a) Owners shall not till, excavate, grade, construct, or engage in any other activity that disturbs the ground surface of the Property without modification of this Covenant pursuant to paragraph 2, below.

   b) The Owners shall not engage in any use or activity that would in any manner interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed at the Property.

   c) The Owners shall not prohibit or interfere with CDPHE's or EPA's, or their agents or contractors, access to the Property for the purposes of environmental sampling, inspecting the remedy, conducting maintenance, or inspecting Owner's compliance with this Environmental Covenant.

2) Modifications  This Covenant runs with the land and is perpetual, unless modified or terminated pursuant to this paragraph. OWNER may request that the Department approve a modification or termination of the Covenant.  The request shall contain information showing that the proposed modification or termination shall, if implemented, ensure protection of human health and the environment.  The Department shall review any submitted information, and may request additional information.  If the Department determines that the proposal to modify or terminate the Covenant will ensure protection of human health and the environment, it shall approve the proposal.  No modification or termination of this Covenant shall be effective unless the Department has approved such modification

2

or termination in writing.  Information to support a request for modification or termination may include one or more of the following:

    a)  a proposal to perform additional remedial work;
    b)  new information regarding the risks posed by the residual contamination;
    c)  information demonstrating that residual contamination has diminished;
    d)  information demonstrating that an engineered feature or structure is no longer necessary;
    e)  information demonstrating that the proposed modification would not adversely impact the remedy and is protective of human health and the environment; and
    f)  other appropriate supporting information.

3) <u>Conveyances</u>.  OWNER shall notify the Department at least fifteen (15) days in advance of any proposed grant, transfer or conveyance of any interest in any or all of the Property.

4) <u>Notice to Lessees</u>.  OWNER agrees to incorporate either in full or by reference the restrictions of this Covenant in any leases, licenses, or other instruments granting a right to use the Property.

5) <u>Notification for proposed construction and land use</u>.  OWNER shall notify the Department simultaneously when submitting any application to a local government for a building permit or change in land use affecting the Property.

6) <u>Inspections</u>.  The Department shall have the right of entry to the Property at reasonable times with prior notice for the purposes described in 1c.  Nothing in this Covenant shall impair any other authority the Department may otherwise have to enter and inspect the Property.

7) <u>No Liability</u>.  The Department does not acquire any liability under State law by virtue of accepting this Environmental Covenant.

8) <u>Enforcement</u>.  The Department may enforce the terms of this Covenant pursuant to §25-15-322. C.R.S. Grantors may file suit in district court to enjoin actual or threatened violations of this Covenant.

9) <u>Owner's Compliance Certification</u>.  OWNER shall execute and return a certification form provided by the Department, on an annual basis, detailing OWNER's compliance, and any lack of compliance, with the terms of this Covenant.

10)   <u>Notices</u>.  Any document or communication required under this Covenant shall be sent or directed to:

Remedial Programs Manager
Hazardous Materials and Waste Management Division

Colorado Department of Public Health and the Environment

4300 Cherry Creek Drive South

Denver, Colorado  80246-1530

Grantors have caused this instrument to be executed this ____ day of _____, 2007.

_____
CHARLES E. CARLSON, Individually

_____
CHARLES E. CARLSON, General Partner
Front Range Royalties, Limited

_____
CHARLES E. CARLSON, General Partner
Frontenac Mining Limited

STATE OF                                    )
                                            )  ss:
COUNTY OF                                   )


    The foregoing instrument was acknowledged before me this ___day of
_____, 2007 by _____ on behalf of the Colorado Department of
Public Health and Environment.


                                                  Notary Public


                                                  Address


My commission expires:

# APPENDIX D

**PROPERTY SUBJECT TO ENVIRONMENTAL COVENANT PROVISIONS SET FORTH IN PARAGRAPH 26 OF CONSENT DECREE**

| Name | US Number | Ownership Percentage | Acres Total (estimated) | County |
|---|---|---|---|---|
| Addudell | # 302 | 100 | 2.29 | Gilpin |
| Autocrat | # 800 | 100 | 2.88 | Gilpin |
| Frontenac Lode and Millsite Acres | #461 (A and B) | 100 | 9.75 | Gilpin |
| Good Luck | # 994 | 85 | 1.7 | Gilpin |
| Hazeltine | # 332 | 100 | 5.16 | Gilpin |
| K of P | # 14911 | 100 | 2.59 | Gilpin |
| Kokamo (Kokomo in county records) | # 149 | 100 | 3.44 | Gilpin |
| Paul | # 416 | 100 | 1.72 | Gilpin |
| Searle | # 156 | 100 | 2.3 | Gilpin |